# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One black Apple iPhone 7S Plus, more fully described in<br>Attachment A | )<br>)<br>)  Case No. **20-51-M**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
One black Apple iPhone 7S Plus, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, which is incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Controlled Substances with Intent to Distribute |

The application is based on these facts:
See Affidavit of Postal Inspector Michael Harrold, continued on the attached sheet.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael D. Harrold, Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1/15/2020__

City and state: __Philadelphia, PA__

_____
*Judge's signature*

Hon. Elizabeth T. Hey, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

The property to be searched is a black Apple iPhone 7S Plus, model A1661, FCCID BCG-E3087A, IC 579C-E3087A, associated with phone number (267) 980-3530, inside of a black and gold case (the "SUBJECT PHONE"). The SUBJECT PHONE is currently in the custody of U.S. Postal Inspection Service ("USPIS") and is located at USPIS Philadelphia Division Headquarters, 333 E. City Ave, Bala Cynwyd, Pennsylvania, 19004.

The warrant would authorize the forensic examination of the SUBJECT PHONE for the purpose of identifying electronically stored data particularly described in Attachment B.

## ATTACHMENT B
## (ITEMS TO BE SEARCHED FOR AND SEIZED)

This warrant authorizes the government to search for and seize the following items that are evidence, fruits, and/or instrumentalities of distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1).

      a.      Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

      b.      Stored list of recent received, sent, and missed calls;

      c.      Stored contact information;

      d.      Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

      e.      Stored text messages related to the aforementioned crimes of investigation, including messages sent in messaging services or messaging applications where the data is stored on the telephone; and

      f.      Geolocation data reflecting the historical location of the phone.

Attachments A & B - 2
USAO #2019R01161

1

2

### AFFIDAVIT OF MICHAEL HARROLD

3       I, Michael Harrold, a Postal Inspector with the United States Postal Service in

4   Seattle, Washington, having been duly sworn, state as follows:

5                    **INTRODUCTION AND AGENT BACKGROUND**

6       1.      I am a Postal Inspector for the United States Postal Service ("USPS"),

7   assigned to investigate the unlawful transportation of contraband, including Title 21

8   controlled substances, through the United States mail.  I have been a Postal Inspector

9   since December, 2018, and am currently assigned to the Seattle Division Headquarters

10  office, located in Seattle, Washington.  Prior to becoming a Postal Inspector, I was

11  employed as a Special Agent with the Naval Criminal Investigative Service ("NCIS")

12  from 2011 to 2018, a Trooper with the Georgia State Patrol from 2001 to 2011, and an

13  Officer with the Marietta Police Department from 1999 to 2001.

14      2.      As part of my duties as a Postal Inspector, I investigate the use of the

15  U.S. mails to illegally mail and receive controlled substances, the proceeds of drug

16  trafficking, as well as other instrumentalities associated with drug trafficking, in violation

17  of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with

18  intent to distribute controlled substances), and 843(b) (unlawful use of a communication

19  facility, including the U.S. mails, to facilitate the distribution of controlled substances and

20  proceeds from the sale thereof).  As set forth below, my training and experience includes

21  the identification of parcels with characteristics indicative of criminal activity.  During

22  the course of my employment as a law enforcement officer, I have participated in many

23  criminal investigations involving suspicious parcels and controlled substances.

24      3.      I have completed the Criminal Investigator Training Program at the Federal

25  Law Enforcement Training Center and NCIS Special Agent basic training courses.  I

26  have also completed Trooper School at the Georgia Public Safety Training Center and

27  basic mandate training at the Northwest Georgia Law Enforcement Academy.  I have

28  received specialized training in the investigation of controlled substances in the

Affidavit of Inspector Harrold - 1
USAO #2019R01210

1 U.S. mails and on the identification of controlled substances and interdiction of
2 controlled substances.

3     4.    I make this affidavit from personal knowledge based on my participation in
4 this investigation, including witness interviews by myself and/or other law enforcement
5 agents, communications with others who have personal knowledge of the events and
6 circumstances described herein, and information gained through my training and
7 experience. The information outlined below is provided for the limited purpose of
8 obtaining a search warrant and does not contain all details or all facts of which I am
9 aware relating to this investigation.

10     5.    In the following paragraphs, I describe communications between various
11 individuals. Except where specifically indicated with quotation marks, the descriptions
12 are summaries of the conversations and are not meant to reflect specific words or
13 language used.

14 **PURPOSE**

15     6.    I make this affidavit in support of an application for a warrant authorizing
16 the search of a cellular telephone a black Apple iPhone 7S Plus, model A1661, FCCID
17 BCG-E3087A, IC 579C-E3087A, associated with phone number (267) 980-3530, inside
18 of a black and gold case, as further described in Attachment A (the "SUBJECT
19 PHONE"). The SUBJECT PHONE is currently in the custody of the USPIS and located
20 at USPIS Philadelphia Division Headquarters, 333 E. City Ave, Bala Cynwyd, PA 19004.
21 In my training and experience, I know that the SUBJECT PHONE has been stored in a
22 manner in which its contents are, to the extent material to this investigation, in
23 substantially the same state as they were when the SUBJECT PHONE first came into the
24 possession of USPIS.

25     7.    As discussed below, there is probable cause to believe that the SUBJECT
26 PHONE contains evidence, fruits, and instrumentalities of the crime of Distribution of
27 Controlled Substances, in violation of 21 U.S.C. § 841(a)(1). The applied for warrant
28

Affidavit of Inspector Harrold - 2
USAO #2019R01210

1  would authorize the forensic examination of the SUBJECT PHONE for the purpose of
2  identifying electronically stored data particularly described in Attachment B.

3  **SUMMARY OF PROBABLE CAUSE**

4  8.  On January 29, 2019, a 32-year-old female was discovered unresponsive at
5  a family member's home in the Seattle area. She was declared deceased at the scene by
6  first responders with the Seattle Fire Department. In the follow-up investigation, the
7  King County Medical Examiner's Office determined that the likely cause of death was
8  acute drug intoxication, including fentanyl.

9  9.  Based on the items found at the scene of the victim's death and a review of
10  her phone and other records, investigators with the U.S. Postal Inspection Service
11  ("USPIS") have identified Jesse S. DITTMAR as the person who provided the victim
12  with fentanyl and acetyl fentanyl, which he sent to her from the Philadelphia area using
13  the U.S. mails. Packaging recovered from the victim's residence and messages recovered
14  from her phone demonstrate that, throughout December, 2018 and January, 2019,
15  DITTMAR sent the victim fentanyl in greeting cards sent via First Class mail and
16  Express parcels. On or about January 14, 2019, DITTMAR sent the victim a greeting
17  card containing fentanyl and acetyl fentanyl, which she did not receive until
18  approximately January 28, 2019, the day before her death.

19  **A.  The Victim's Death**

20  10.  On January 29, 2019, a 32-year-old female was discovered unresponsive in
21  her bedroom at her brother's home in the Seattle area. According to her brother, the
22  victim had moved to Seattle from Pennsylvania in the fall of 2018, after breaking up with
23  her boyfriend, DITTMAR. Before she moved to Seattle, and while still in a relationship
24  with DITTMAR, the victim attempted suicide by overdose. She survived but, according
25  to the victim's brother, DITTMAR became very controlling, and the victim decided to
26  leave the relationship. According to her brother, the victim hoped to start new in Seattle,
27  so she secretly left Philadelphia and cut off communication with DITTMAR.

28

Affidavit of Inspector Harrold - 3
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        11.     The victim's brother had last seen her alive on the evening of January 28,
2   2019, when she had gone into her bedroom at his home.  When the victim did not leave
3   her room the next day or respond to any calls or texts, her brother returned home from
4   work to check on her.  He forced open the door to her bedroom, which was locked, and
5   found her body lying on the ground next to her bed.  First responders with the Seattle Fire
6   Department declared the victim deceased at the scene.

7   **B.      Initial Investigation by the King County Medical Examiner's Office**

8        12.     Investigators with the Seattle Police Department and the King County
9   Medical Examiner's Office responded to the brother's home and processed the victim's
10  bedroom.  In a dresser drawer, investigators found six small plastic bags labeled "Just
11  Blaze," five of which contained a white powdered substance believed to be fentanyl, and
12  one of which was empty save for the "Just Blaze" wrapping.  Investigators also found
13  similar small plastic bags throughout the room that contained only wrappings, including
14  five blue paper wrappings and three white wrappings labeled "VIP."  Based on my
15  training and experience, I know that fentanyl is a white powder that is often sold in small
16  plastic bags that contain wrappings similar to those found in the victim's room.  Drug
17  dealers are known to "brand" the products that are sold with names and specific
18  packaging to facilitate the sale of the narcotics.

19       13.     Investigators found several pieces of mail in the room, including greeting
20  cards signed "Jesse" and a USPS Express parcel from "John Simpson, 285 Butterworth
21  Ln, Langhorne, Pa 19047" to the victim's name at her brother's address, which was
22  shipped from the Bensalem, Pennsylvania Post Office on January 3, 2019.

23       14.     Finally, investigators found in the room several empty bottles of beer and
24  wine, a bottle of medication prescribed to the victim, cold medication, three 10 milliliter
25  vials of Lidocaine, and a number of syringes.  The victim's brother did not know why the
26  victim had Lidocaine in her room, but believed that she was having issues with her teeth
27  and may have used it to numb related pain.

28

Affidavit of Inspector Harrold - 4
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    15.    The victim's body was transported to the King County Medical Examiner's
2  Office, where an autopsy was performed.  Based on the autopsy and preliminary
3  toxicology tests, the Medical Examiner later concluded that the cause of the victim's
4  death was acute drug intoxication, including fentanyl.  Later testing of the victim's blood
5  and the white substance found in the "Just Blaze" bags recovered from the victim's room
6  later confirmed the presence of fentanyl and acetyl fentanyl.[1]

7  ## C.  Subsequent Investigation by the U.S. Postal Inspection Service

8    16.    In the week after the victim's death, family members began to clean the
9  room in which she had been found.  While cleaning the room, her brother found the
10  victim's unlocked Apple iPhone, which he looked through and found messages relating
11  to drug use. The family notified the King County Medical Examiner's Office about their
12  findings, who in turn contacted USPIS, as the investigation to that point had shown that
13  the narcotics had likely been provided to the victim through the U.S. mails.  On
14  February 1, 2019, the victim's family turned this phone over to investigators with USPIS
15  for review.  In an interview with the victim's brother, he confirmed that he did not delete
16  or change any of the data contained on the phone before turning it over to law
17  enforcement.

18    17.    Family members also found additional small plastic bags containing empty
19  wrappings in the victim's jacket and the packaging for several items of mail that had been
20  sent from Pennsylvania, including envelopes that had been sent by USPS First Class mail
21  and parcels sent by USPS Express.  The victim's family provided the jacket, wrappings,
22  and mailings recovered from the victim's room to USPIS investigators.

23

24

25  _____

26  [1] The victim's blood and the white substance recovered from her room also tested positively for
    the presence of xylazine, a non-controlled substance that is used as a tranquilizer for horses,
27  cattle, and other non-human mammals.  The victim's blood also tested positively for the presence
    of citalopram, for which the victim had a prescription; pseudophedrine, a common cold
28  medication; and caffeine.

Affidavit of Inspector Harrold - 5                                    UNITED STATES ATTORNEY
USAO #2019R01210                                                      700 STEWART STREET, SUITE 5220
                                                                      SEATTLE, WASHINGTON 98101
                                                                      (206) 553-7970

1    18.    I conducted a review of the victim's cell phone and located messages
2  between the victim and a contact listed as "Jay," with the phone number (267) 980-3530
3  (the "3530 Number"). Based on searches of law enforcement databases and information
4  located on arrest reports for DITTMAR, I have identified the phone number, email
5  address, and physical address listed in the victim's phone for the contact "Jay" as being
6  associated with DITTMAR. Moreover, the content of the text messages, chats, and
7  photos sent between the victim and "Jay" confirm that "Jay" is, in fact, DITTMAR.

8    19.    In reviewing the phone's contents, it appears that DITTMAR repeatedly
9  contacted the victim from numbers other than the 3530 Number in the first few months
10  that she was living in Seattle, and that she did not respond until December, 2018. In the
11  victim's phone, I identified over 600 chat message groups between the victim and
12  DITTMAR at the 3530 Number, containing almost 9,000 messages. These messages
13  range in date from December 31, 2017 to the date of the victim's death on January 29,
14  2019, with the majority of the messages falling after December 20, 2018. Multiple
15  messages and photographs exchanged by the victim and DITTMAR reference the
16  distribution of fentanyl and DITTMAR's use of the U.S. mails to send the victim greeting
17  cards containing controlled substances in December, 2018 and January, 2019.

18    *1.    December 24, 2018 Mailing*

19    20.    In his messages with the victim in December, 2018, DITTMAR made
20  numerous references to obtaining fentanyl for the victim and sending it to her through the
21  mail. For example, on December 21, 2018, DITTMAR messaged the victim to tell her
22  that he had "sent [] that dope I bought last night this morning. . . . If you want the
23  tracking number let me know." DITTMAR offers to send additional narcotics to the
24  victim, noting that he can get "2 different kinds of fetantyl. [sic] A dope fetynal [sic]
25  split or a dope tranquilizer split." DITTMAR then tells the victim that he has to "stop at
26  711 and grab [her] a card" and, later, sends her a photograph that includes two needles
27  and a number of small plastic bags containing suspected fentanyl in blue wrapping.

28

Affidavit of Inspector Harrold - 6
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      21.    Later that evening, DITTMAR and the victim discussed the amount of
2 postage that he would need to send a card to her, and DITTMAR tells her that she needs
3 to call him or he is "keeping [the] drugs. And this very cool card." DITTMAR then says
4 that he has realized that "[f]etynal [sic] is probably much better to send no sent [sic]."
5 Finally, DITTMAR tells the victim to be careful, because "[i]t did kill a few thousand
6 people in Philly this summer."

7      22.    On December 23, 2018, DITTMAR messaged the victim to say that, while
8 preparing to mail her card, he "dipped out" of his car in front of the Post Office and had
9 been "arrested with [her] dope." According to DITTMAR, the arresting officer had taken
10 "13 bags" when he was arrested, but the victim shouldn't worry, because he "went back
11 down after they released [him]" and sent her "5." I confirmed that the Bristol Township,
12 Pennsylvania Police Department arrested DITTMAR on December 23 and have reviewed
13 the arresting officer's report. The report indicates that DITTMAR was found alone,
14 sleeping in a vehicle parked in the parking lot of the Croydon, Pennsylvania Post Office.
15 In DITTMAR's possession, the arresting officer located two needles, three methadone
16 pills, and twelve blue bags labeled "flatline," which the arresting officer suspected
17 contained heroin. DITTMAR admitted to purchasing the drugs in Philadelphia and using
18 one of the bags prior to his arrest.

19      23.    After the victim's death, her brother provided me with an image that he had
20 received on the USPS Informed Delivery application, a consumer-facing feature offered
21 by USPS that provides users with digital previews of their household mail arriving soon.
22 The image shows an item of First Class mail that was postmarked December 24, 2018
23 and sent from Philadelphia, Pennsylvania to the victim at her brother's address. The
24 return address on the envelope is "Jesse D, 285 Butterworth Ln, Langhorne, Pa, 19047."
25 A search of available law enforcement databases shows that DITTMAR once lived at
26 another house number on Butterworth Lane. Moreover, in text messages between the
27 victim and DITTMAR on January 23, 2019, DITTMAR mentions that a card with that
28 return address would be returned to his "old next door neighbor."

Affidavit of Inspector Harrold - 7
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    ### 2.    *January 3, 2019 Mailing*

2        24.    On January 1, 2019, DITTMAR sent the victim a photograph of nineteen
3    small plastic bags containing suspected fentanyl in blue wrapping. In the messages that
4    follow, DITTMAR told the victim that he would send some of the suspected fentanyl to
5    her. The next day, on January 2, 2019, DITTMAR messaged the victim to tell her that
6    "[t]he dope last night was crap so I wanna get you something better." Later that evening,
7    DITTMAR sent the victim a photograph of twenty-four small plastic bags containing
8    fentanyl in blue wrappings or bearing "VIP" labels, consistent with items found in the
9    victim's bedroom after her death.

10        25.    On January 3, 2019, DITTMAR messaged the victim reiterating a demand
11    that she come on a vacation with him, because he was "risking a federal offense" to send
12    her fentanyl, "[e]specially overnight where there are cameras." DITTMAR asks the
13    victim for her address and, after she provides her brother's address, he confirms that the
14    package has been sent. DITTMAR then sent the victim photographs of the parcel
15    tracking number, EE323999570US, and the receipt for the mailing.

16        26.    The parcel matching this tracking number, Express Parcel
17    EE323999570US, was recovered from the victim's bedroom after her death. The parcel
18    was shipped from the Post Office at Bensalem, Pennsylvania on January 3, 2019 and lists
19    the sender as "John Simpson" at the same Butterworth Lane address listed as the return
20    address on the December 24, 2018 mailing.

21    ### 3.    *January 14, 2019 Mailing*[2]

22        27.    On January 13, 2019, DITTMAR messaged the victim to tell her that he
23    would be sending her something called "just blaze," consistent with the label on the
24    opened package of fentanyl found in the victim's room. DITTMAR told the victim that

25

26

27    [2] Mailings recovered from the victim's bedroom and messages between the victim and
DITTMAR demonstrate that DITTMAR sent additional mailings to the victim on December 6
28    and 15, 2018, and on January 10, 2019.

Affidavit of Inspector Harrold - 8
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | the drug used to go by two different names, but that it "change[s] names everytime
2 | someone d[i]es."

3     28.   On January 14, 2019, DITTMAR asked the victim in a text message to send
4 | her address again, and she sends him her brother's address in Seattle. DITTMAR told the
5 | victim that the card he is sending is heavy, and he and the victim discussed the number of
6 | stamps that he should put on the letter, settling on two.

7     29.   The card that DITTMAR sent did not arrive at the expected time and, over
8 | the next two weeks, DITTMAR and the victim messaged each other about the missing
9 | card.

10           a.   On January 16, 2019, the victim messaged DITTMAR to ask when
11           he had mailed the card. DITTMAR responded that he probably mailed it
12           on Monday, January 14, and that he thought it would arrive on Thursday or
13           Friday of that week.

14           b.   On January 17, 2019, the victim messaged DITTMAR to say that the
15           mail had not arrived that day and to ask "how many" he had sent her.
16           DITTMAR told the victim that he had sent "6 bags of [his] all time
17           favorite" and to be careful.

18           c.   On January 19, 2019, DITTMAR messaged the victim that he
19           thought he should have put three stamps on the card, because it was heavy.

20           d.   On January 23, 2019, the victim messaged DITTMAR that she did
21           not think the card was coming, but that he did not have to send any more to
22           her. DITTMAR responded that the card was heavy and "sick," because it
23           had a "pop up tiger with wings."

24     30.   At approximately 5:51 p.m. on January 28, 2019, the victim messaged
25 | DITTMAR a picture of a greeting card decorated with a tiger with wings, commenting:
26 | "Can't believe it came." The victim then told DITTMAR that she had done "the smallest
27 | line ever and couldn't even walk straight." At approximately 8:08 p.m., the victim
28 |

Affidavit of Inspector Harrold - 9
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  messaged DITTMAR that she was not feeling well and had thrown up after dinner with
2  her brother's family. Shortly afterward, the victim stopped responding to messages.

3      31.    A greeting card with a flying tiger on the front, identical to the card in the
4  picture that the victim sent DITTMAR on January 28, 2019, was recovered from the
5  victim's room after her death. The card is signed "Jesse" and was sent in an envelope
6  that was addressed to the victim at her brother's address. The envelope bears no sender
7  name but, again, has a return address of "285 Butterworth Ln, Langhorne, PA 19047."
8  Also found in the victim's room after her death was a handwritten note stating "Secret
9  Magic Dust to Make Tiger Fly!", which was contained in the wrapping about the small
10  plastic bags containing fentanyl and labeled "Just Blaze."

11      **4.**    ***DITTMAR's Current Status***

12      32.    On January 14, 2020, investigators with USPIS arrested DITTMAR
13  pursuant to an arrest warrant issued by the court in the Western District of Washington.
14  DITTMAR's phone was located in a backpack being carried by DITTMAR, during the
15  arrest. On January 14, 2020, an investigator called the 3530 Number and I sent a text to
16  the 3530 Number, and the SUBJECT PHONE received the call and text message.

17      33.    DITTMAR still actively uses the 3530 Number. In an undercover capacity,
18  I contacted DITTMAR at the 3530 Number from December 27 to 30, 2019, to set up an
19  appointment with him at his workplace in January, 2020, purportedly to get a tattoo. In
20  text messages, I addressed the recipient as "Jesse" and inquired if he still worked at a
21  particular tattoo shop. The user of the 3530 Number responded that he worked at a new
22  location, which is the same location as appears on DITTMAR's social media. I have also
23  reviewed records from the 3530 Number's service provider, which show that the 3530
24  Number was still making and receiving phone calls as of the time the records were
25  produced in December, 2019. Moreover, the provider's records list DITTMAR as the
26  user of the 3530 Number, and service for the number is being paid by one of
27  DITTMAR's family members.

28

Affidavit of Inspector Harrold - 10
USAO #2019R01210

## TRAINING AND EXPERIENCE

34.     Based upon my training and experience, and conversations with other experienced law enforcement agents and officers who have been involved in narcotics cases, I know the following:  Drug dealers regularly use cell phones, Blackberries, and other electronic communication devices to further their illegal activities.  As a result, evidence of drug dealing can often be found in text messages, address books, call logs, photographs, emails, text messaging or picture messaging applications, videos, and other data that is stored on cell phones, Blackberries, and other electronic communication devices.  Additionally, the storage capacity of such devices allows them to be used for the electronic maintenance of ledgers, pay/owe logs, drug weights and amounts, customer contact information, not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances.  The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

35.     I have found that drug dealers almost always use phones to facilitate their illegal business.  Even when those involved in drug trafficking organizations try to use their cell phones as little as possible, their use is still necessary to coordinate meetings between the buyers and sellers.  It is common for drug traffickers to use more than one cellular telephone at any one time.

36.     Based upon my training and experience, and conversations with, and training from, other officers and agents involved in narcotics investigations, I know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity.  They use them to maintain contact with their suppliers, distributors, and customers.  They prefer cellular telephones because they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs.

Affidavit of Inspector Harrold - 11
USAO #2019R01210

37.     Based on my training and experience, the data maintained in a cellular

telephone used by a drug dealer is evidence of a crime or crimes.  This includes the

following:

a.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone.  This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

b.     The stored list of recent received, missed, and sent calls is important evidence.  It identifies telephones recently in contact with the telephone user.  This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts.  If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting.  Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user.  Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.     Stored text communications are important evidence, similar to stored numbers.  Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.  Moreover, stored text communications from the victim's phone demonstrate that DITTMAR discussed his methods for obtaining controlled substances and his plan to distribute them to the victim in text communications, which are likely to be stored on his own phone.

d.     Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user.  Pictures also identify associates likely to be members of the drug trafficking

Affidavit of Inspector Harrold - 12
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located

e.     Stored contact information is important evidence because it shows the user's close associates and family members, and it contains names and nicknames connected to phone numbers that can be used to identify suspects.

38.     Based on my training and experience, geolocation data reflecting the historical location of a cellular phone is important evidence because it can establish the dates and times that the user was in locations pertinent to this offense.

39.     Based on my knowledge, training, and experience, I know that digital devices such as cellular telephones can store information for long periods of time.

//

//

//

Affidavit of Inspector Harrold - 13
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**CONCLUSION**

2      40.    Based on the foregoing, I respectfully submit that there is probable cause to

3 search a cellular telephone a black Apple iPhone 7S Plus, model A1661, FCCID BCG-

4 E3087A, IC 579C-E3087A, associated with phone number (267) 980-3530, inside of a

5 black and gold case, as further described in Attachment A, for evidence, fruits, and

6 instrumentalities, as further described in Attachment B, of the distribution of controlled

7 substances, in violation of Title 21, United States Code, Section 841(a)(1).

8

9

10                                    MICHAEL D. HARROLD

11                                    Postal Inspector
                                   U.S. Postal Service

12

13    SUBSCRIBED AND SWORN before me this _15_ day of January, 2020.

14

15

16

17                                    HON. ELIZABETH T. HEY

18                                    United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

Affidavit of Inspector Harrold - 14
USAO #2019R01210

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970